996 F.2d 1218
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Richard C. PELFREY, Defendant-Appellant.
 Nos. 92-3690, 92-3724.
 United States Court of Appeals, Sixth Circuit.
 June 15, 1993.
 
 Before GUY and NELSON, Circuit Judges, and WELLFORD, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is a criminal case that has been here before. The main issue presented in the first appeal was whether the sentencing court had adequately explained the extent of its upward departure from the sentence range prescribed by the sentencing guidelines for typical cases. Answering that question in the negative, we remanded the case for resentencing. An identical issue is presented in the current appeal. Concluding that we must give an identical answer, we shall again remand for resentencing.
 
 
 2
 * As explained in greater detail in our earlier opinion, which was issued on December 16, 1991, in Case No. 90-3731, the defendant, Richard C. Pelfrey, developed a bizarre obsession with a popular teenaged singer named Debbie Gibson. Mr. Pelfrey wrote a number of letters to Ms. Gibson, traveled from Ohio to New York in an attempt to visit the Gibson family's home, and wrote a letter threatening Ms. Gibson and her father after the latter told Mr. Pelfrey to leave the girl alone. Mr. Pelfrey was arrested and confined for a weekend in August of 1988, but he continued to write threatening letters thereafter. One of the letters stated that "everyone in that house [in New York] will die. I told you where I was heading, Hinckley and Charles Manson."
 
 
 3
 Mr. Pelfrey pleaded guilty to having violated 18 U.S.C. § 876 by placing in the mails, with intent to extort a sum of money, a letter in which he threatened to injure or kill the Gibsons. A presentence report placed Mr. Pelfrey's offense level at 12 and identified his criminal history category as Category I. The guideline range for these coordinates is imprisonment for 10-16 months. On motion of the government the district court sentenced Mr. Pelfrey to imprisonment for 72 months, with this sentence to be followed by a three-year period of supervised release.
 
 
 4
 We concluded in the first appeal that an upward departure from the guideline range was justified. We had difficulty, however, in determining whether the extent of the departure was reasonable under 18 U.S.C. §§ 3742(e)(3) and (f)(2):
 
 
 5
 "In this case, as in United States v. Lassiter, 929 F.2d 267, 271 (6th Cir.1991), the district court failed to justify the degree of departure in light of what the Court of Appeals for the Ninth Circuit has called 'the structure, standards, and policies of the Act and Guidelines.' United States v. Lira-Barraza, 941 F.2d 745, 751 (9th Cir.1991) (en banc ). The absence of any such justification makes it difficult for us to determine the reasonableness of the 56-month departure that the court chose to impose.
 
 
 6
 "If the district court had arrived at a sentence by treating the defendant as belonging in a criminal history category higher than Category II, our precedents suggest that the district court would have been required to look first at Criminal History Category II (that being the category next to the one in which the guidelines placed the defendant) and explain why a sentence within the guideline range for Category II would not be appropriate. Lassiter, 929 F.2d at 271; United States v. Kennedy, 893 F.2d 825, 829 (6th Cir.1990).
 
 
 7
 "In actuality ... the guidelines placed the defendant's criminal history category at I and his offense level at 12. The first point in the sentencing table matrix where the guideline range exceeds 71 months comes at the intersection between Criminal History Category VI and Offense Level 19. The guideline range for those variables is imprisonment for 63-78 months. If a sentence within that range is appropriate (as it may well be), the district court needs to explain why--and it needs to do so by linking this case to specific offense levels and specific criminal history categories. See United States v. Osborne, [948 F.2d 210] (6th Cir.1991), for an illustration of how this approach operates." (Slip Op. at 9-10.)
 
 
 8
 The district court concluded on remand that the defendant's guideline range "should be 57 to 71 months." The court then imposed a new sentence of 71 months--one month less than the original sentence. The court did not explain how it arrived at the 51-71 month range.
 
 II
 
 9
 In resentencing Mr. Pelfrey, the district court referred to U.S.S.G. § 4A1.3 (adequacy of criminal history category) and noted that the record is "replete with [the] possibility" that Mr. Pelfrey might commit more crimes in the future. Again, however, the district court failed to look first at the next higher criminal history category and explain why that category was inadequate, if in fact it was inadequate. See United States v. Lassiter, 929 F.2d 267, 270 (6th Cir.1991):
 
 
 10
 "A sentencing court must examine the next higher criminal history category when departing from the guidelines, and if departing beyond this next level, the sentencing court must demonstrate that it found the sentence imposed by the next higher level too lenient."
 
 
 11
 In apparent reliance on U.S.S.G. § 5K2.3 (extreme psychological injury) the district court also stated that "[i]f the victim suffered psychological injury much more serious than that resulting from the commission of the offense, the Court may depart in an upward fashion." The court did not determine, however, whether the victim in this case actually had suffered any such psychological injury. Neither did the court assess the severity of the injury and the extent to which it was intended, both of which factors are critical to a proper determination of the extent of the increase.
 
 
 12
 The court also mentioned U.S.S.G. § 5K2.8 (extreme conduct) as a basis for departure, and found that there had been "a relentless pursuit of Miss Gibson and her family which ... should not be countenanced and cannot be." We do not disagree, of course, but we repeat: the fact that a departure is justified does not tell us what the extent of the departure ought to be.
 
 
 13
 Finally, the court cited U.S.S.G. § 2A6.1, which says "[i]f the defendant engaged in any conduct evidencing an intent to carry out [a] threat, increase [the offense level] by 6 levels." Such an increase might have been an appropriate step in determining the guideline range that was to be departed from, but we need more than this if we are to review the appropriateness of the departure ultimately chosen.
 
 
 14
 We recognize that it is burdensome to have to justify the extent of departures by reference to what Lassiter calls the "structure, standards, and policies ... of the Guidelines." 929 F.2d at 271. This is what the caselaw requires, however--and it is always possible that in going through the required exercise the court may find that its tentative views on the appropriate magnitude of the departure have been modified one way or another. In any event, whether the district court changes its mind or not, the kind of analysis required by the caselaw is essential if the reviewing court is to do its job properly.
 
 
 15
 The defendant's sentence is VACATED, and the case is REMANDED for resentencing.
 
 WELLFORD, Senior Circuit Judge, concurring:
 
 16
 I would also remand this case again for resentencing for most of the reasons stated by the majority. I disagree, however, that under the facts of this case it is proper to apply the following provisions of the guidelines:
 
 Extreme Conduct (Policy Statement)
 
 17
 If the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim, the court may increase the sentence above the guideline range to reflect the nature of the conduct. Examples of extreme conduct include torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation.
 
 
 18
 U.S.S.G. § 5K2.8.
 
 
 19
 I would conclude that the defendant's conduct, although obnoxious, threatening and harassing to the victim and her family, was not "unusually heinous, cruel, brutal or degrading." The government cites two cases in support of utilizing this section; both, I believe, are clearly more extreme and involve persistent and continuing physical conduct far beyond the defendant's criminal (and misguided) activity in this case.
 
 
 20
 United States v. Phillip, 948 F.2d 241 (6th Cir.1991), cert. denied, 112 S.Ct. 1994 (1992), was concerned with terrible and severe abuse of a young child eventually resulting in his death. We noted in Phillip that "only highly unusual circumstances can justify an upward departure equivalent to three offense levels." Id. at 254 (emphasis added). Phillip surely does not support the six level departure in this case.[1]
 
 
 21
 The other case, United States v. Patrick, 935 F.2d 758 (6th Cir.), cert. denied, 112 S.Ct. 269 (1991), involved the actual kidnapping of a young girl by the defendant who continuously maintained that he intended to raise the child so that he could marry her, at age thirteen, regardless of the child's or her family's objections. Kidnapping of a young child for any purpose has been deemed by society an especially heinous offense. The district court departed under § 5K2.8 in part because the defendant maintained that his inflexible, religious beliefs compelled him to "complete the crime ... no matter what the period of incarceration might be, he intended to find this child [and kidnap her again so she could] reach[ ] her destiny." Id. at 761. The court departed upward 5 levels in that case.
 
 
 22
 Phillip and Patrick each concerned far more egregious circumstances and conduct than what is involved here. I consider the use of § 5K2.8 to be appropriate only in the very rare case, and that an upward departure thereunder of more than three levels, based upon this section, to be even more rare.[2] I, therefore, do not join the majority's indication that application of § 5K2.8 is appropriate here.
 
 
 23
 While I concur with the majority view that an upward departure is indicated, I also express my reservation that U.S.S.G. § 5K2.3 (extreme psychological injury) has been demonstrated to be applicable here.
 
 
 
 [1]
 The dissenting judge in Phillip was not in agreement with an upward departure even to the extent approved by the majority. See also the concurring opinion of Judge Heaney in United States v. Perkins, 929 F.2d 436, 440 (8th Cir.1991), for a discussion of what seemed to another judge to be a "grossly disproportionate" sentence under § 5K2.8 ("more than twice the authorized guidelines sentence" imposed)
 
 
 [2]
 Only one and a half percent of criminal sentences involve upward departures above applicable guidelines. U.S. Sentencing Commission, 1992 Annual Report, p. 121. For a case involving a tripling of a guideline sentence for mailing threatening communications where defendant had already killed one prior victim under similar circumstances, see United States v. Pergola, 930 F.2d 216 (2d Cir.1991)